# CASES

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—DECEMBER TERM, 1887.

## D. D. ALLING
v.
## CAROLINE A. P. BRAZEE, ADMINISTRATRIX.

*Book Account—Death of Debtor—Admission of Books in Evidence—Sec. 3, Chap. 51, R. S.*

1. A plaintiff who has made the proper preliminary proof may produce his books of account in evidence in an action against the administratrix of the debtor.
2. Testimony of a creditor, in the absence of specific objection, that a certain account book "was his book account and kept by him," is sufficient preliminary proof to warrant the introduction of the same in evidence.

[Opinion filed May 28, 1888.]

APPEAL from the Circuit Court of Winnebago County; the Hon. O. H. HORTON, Judge, presiding.

Mr. A. D. EARLY, for appellant.

Mr. R. F. CRAWFORD, for appellee.

LACEY, J. This suit was originally brought before a justice of the peace by the appellant, who recovered in that court,

(595)

and the cause was appealed to the Circuit Court, where, upon trial by the court without a jury, it found in appellee's favor and gave judgment against appellant for costs, from which judgment this appeal is taken. The suit was originally brought against C. M. Brazee, the intestate of appellee, and judgment in the justice court was rendered against him, but at the trial in the Circuit Court C. M. Brazee had become deceased, and appellee had been appointed administratrix of his estate.

The action was based on a book account which the appellant presented against the deceased, C. M. Brazee. There was evidence in the case before the Circuit Court tending to show that C. M. Brazee, deceased, admitted the account, but it was weak and unsatisfactory.

The main point urged for reversal, is the refusal of the court to admit the book of accounts of appellant in evidence. The appellant was called as a witness and testified that he was the plaintiff; " that the book now shown me is my book account where I kept my accounts of my work. It is a book of original entries, kept by me; is true and just. The account before me in this book is the account against Mr. Brazee."

The appellant then offered the book in evidence, to which the appellee objected, and the court sustained the objection, to which ruling of the court the appellant excepted.

The correctness of this ruling is now questioned. It will depend on the proper construction to be given to Sec. 3, Chap. 51, R. S., concerning evidence. It reads as follows:

" Where, in any civil action, suit or proceeding, the claim or defense is founded on a book account, any party or interested person may testify to his account book, and the items therein contained; that the same is a book of original entries, and that the entries therein were made by himself, and are true and just."

Sec. 1 provides: " That no person shall be disqualified as a witness in any civil action, suit or proceeding, except as hereafter stated, by reason of his or her interest in the event thereof, as a party or otherwise, or by reason of his or her conviction of any crime; but such interest or conviction may be shown for the purpose of affecting the credibility of such

witness; and the fact of such conviction may be proven like any fact not of record, either by the witness himself (who shall be compelled to testify thereto) or by any other witness cognizant of such conviction, as impeaching testimony, or by any other competent evidence."

Then follows Sec. 2, limiting the operation of the above section, which reads as follows: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard or lunatic or distracted person, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called on as a witness by such adverse party so suing or defending, and also except in the following cases, namely:"

Then follow five different exceptions to the above inhibition, or rather exceptions to the exceptions to said Sec. 1.

There is some objection made by appellee's counsel that the appellant did not, even if entitled to testify to the preliminary facts under said Sec. 3, make the necessary proof that the entries were made by himself. That it was not sufficient for him to swear that the book " was kept by him." We do not think the objection is well taken. If the proof had not been satisfactory, instead of a general objection to its introduction in evidence, it should have been objected that the preliminary proof was insufficient, when it could have been remedied.

The proof, we think, was sufficient, and the statute substantially complied with. Presbyterian Church of New Boston v. Emerson, 66 Ill. 269. We do not think that Sec 2 was intended to be an exception to the provisions of Sec. 3. The language of Sec. 2 is, "no person, etc., shall be allowed to testify, etc., in his own behalf by virtue of the foregoing section." And the "*foregoing section*" is number 1 and not number 3.

No. 3 appears to be an independent section standing by itself, to the provisions of which there appears to be no excep-

tion named in the act.    How the exceptions contained in number 2, which are limited to provisions of Sec. 1, can apply to Sec. 3, we are unable to see.    The first section, no doubt, in providing that "no person shall be disqualified as *a witness*," etc., etc., means that "no person should be disqualified as a *general witness*," etc.

If this were not so there would have been no necessity for the enactment of Sec. 3.    The proof which the plaintiff is allowed to make by Sec. 3, is in its nature preliminary proof, like that of the common law proof of the loss of deeds to enable the contents of the original to be shown by parol, or according to present statute, the record to be read.    At common law, in many of the States a party might make the preliminary proof necessary to introduce books of account by his own oath.    Strickland v. Wynn et al., 51 Ga. 600.    The decision in that case allowed preliminary proof in the nature of the evidence offered here, to be made by the plaintiff, notwithstanding the debtor was dead, and the case defended by the administrator.    The statute of Georgia contained provisions nearly exactly like Secs. 1 and 2 of our statute.

The decision was made on the basis that by common law the plaintiff could make such preliminary proof by his own oath prior to the passage of the statute and the statute did not repeal the law as it had existed.    The statute contained no such provisions as section number three.

In North Carolina a statute similar to the provisions of Sec. 3 had existed for a long time, when a statute similar to Secs. 1 and 2 of our statute was enacted.    In Leggett v. Grover et al., 71 N. C. 211, where a similar question as is here presented was raised as to the effect of the last statute on the first, it was held that the last did not repeal the old one.    If Sec. 3 had been passed at a different time from Secs. 1 and 2, the case would have been similar to the case last above cited.

It could make no difference that our act is all in one.    The statute in regard to evidence seems to be a general amendment of the common law rules on the subject of evidence and its production.    At common law a party might introduce in evidence his books of account, provided he made certain prelim-

inary proof. He was required to prove by evidence of disinterested witnesses the following points, to wit: That he kept no clerk; that the books were his books of account; that they were books of original entry; that the entries therein were in his handwriting; that they had settled by the same books and found them just and true; that some of the articles charged or work done were delivered or done about the time charged. Boyer v. Sweet, 3 Scam. 120.

This rule, as to the admissibility of a party's account books, was an exception to the general rule of the common law, that no party was allowed to testify in his own behalf, or produce evidence that he had made himself, and grew out of the necessities of the case, and was intended to prevent a failure of justice, as in many cases a party would be wholly unable to prove his accounts unless he could introduce his account book in evidence; but the right to so introduce the account book was hedged around with the foregoing preliminary conditions in order to protect the rights of the party against whom the account book was to be introduced, and to prevent fraud and imposition. The common law was extremely rigid and excluded every one from being a witness who had any interest in the event of the suit. There were one or two other exceptions to the general rule; one was that in a suit against a common carrier for the loss of baggage in carriage, the plaintiff was allowed to testify in his own behalf as to what articles were contained in the package and their value. This exception also was adopted through necessity and to prevent the failure of justice. These exceptions held good not only in case the suit was brought against the debtor in his lifetime or against his administrator. They were of universal application.

In the course of time experience taught that the old common law policy, to exclude all persons from being witnesses who had any interest in the event of the suit, was not calculated to work for the general good of society, and a great change, though quite recent and long delayed, took place by the enactment of statutes repealing the old common law in that regard and allowing all parties to testify, with some limitations. The wonder is now with members of the bar and the general public

how such an illiberal and narrow rule as the common law rule could ever have existed and why it was followed so long.

In regard to the requirements of the common law rule in respect to the introduction of account books it was found the preliminary proof required was in most instances exceedingly hard to make and in many cases could not be made; that the rule was so stringent that in many, and perhaps a majority of cases, the account books could not be introduced on account of the impossibility to make proof of some one or more of the required facts to be proven. So the legislature, in the act generally liberalizing the common law rule of evidence, took cognizance of this rule in regard to the introduction of books of account and it came in for amendment; and was enacted as it was found in Sec. 3 above quoted, without limitations.

It may be more proper to say that it was repealed and superseded by the new enactment in regard to it. Presbyterian Church, etc., v. Emerson, 66 Ill. 269. But, as we think, like the old rule on the same subject, it was intended, like it, to have unlimited application without regard to the parties to the original transaction being dead or alive. Judging as well from the reason of the rule as the structure of the statute, as we have shown, we must hold that there is no limitation to the operations of the law as enacted in Sec. 3; that the appellant, having made the necessary preliminary proof, was entitled to have his books of account admitted in evidence, and that the court erred in refusing it.

Sec. 3 does not allow a party to testify generally to the items of his account any farther than is particularly specified in the section. He can not be a general witness as to the items. It is not necessary to discuss other questions. The judgment is, therefore, reversed and the cause remanded.

*Reversed and remanded.*